**Richard M. CLOKEY, Appellant–Petitioner,**

v.

**Penny M. BOSLEY CLOKEY, Appellee–Respondent.**

No. 84A01–1009–DR–450.

Court of Appeals of Indiana.

Sept. 1, 2011.

William S. Frankel, IV, Wilkinson, Goeller, Modesitt, Wilkinson & Drummy, Terre Haute, IN, Attorney for Appellant.

Eric A. Frey, Frey Law Firm, Terre Haute, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Petitioner, Richard M. Clokey (Richard), appeals the trial court's award of spousal support to Appellee–Respondent, Penny M. Bosley Clokey (Penny).

We affirm.

### ISSUE

Richard raises one issue on appeal, which we restate as the following: Whether the trial court abused its discretion

when it awarded Penny incapacity maintenance in the amount of $2,000 a month.

## FACTS AND PROCEDURAL HISTORY

Richard and Penny were married on June 19, 2004.[1] At the time of their marriage, Richard was a retired professor from Indiana State University and had assets exceeding $600,000.00 in an investment fund at Volkers Group. Richard was also the beneficiary and co-trustee of a family trust (Trust) created by his parents prior to his marriage to Penny and from which he received periodic distributions at his discretion. Additionally, Richard was receiving social security income of $1,481 a month. Penny was not working and was receiving social security disability benefits of approximately $741 a month and paying $400 a month for her medication.

Soon after their marriage, Richard and Penny purchased a home in the Idle Creek Subdivision in Terre Haute, Indiana for $335,000 and titled the house in both of their names. Penny sold the home she had been living in prior to their marriage and used the proceeds of that sale, $21,773.86, towards the Idle Creek home. Additionally, they took out a mortgage for $167,000 to purchase the home and used funds from the Trust.

At some point, Richard and Penny sold the Idle Creek home and purchased a residence on Woodbine Drive for $225,000. They took out a mortgage for $175,000 and paid for the remainder of the purchase price with money from the Trust. After moving into the Woodbine Drive home, in August 2008, Richard informed Penny that he wanted a divorce; however, in December 2008, Richard told Penny that the only reason he wanted a divorce was because of

financial issues.[2] Over the course of the next several months, Richard's investment fund at Volkers Group went from $210,827.26 in August 2008 to a zero balance in May 2009.

In April 2009, Richard and Penny sold the home on Woodbine Drive with a profit of $48,000 and purchased a home on Wilson Drive with the profit from the sale and the remainder from the Trust. Richard and Penny also used the profit to improve the Wilson Drive property. The home on Wilson Drive was titled to the Trust; however, the parties never paid any rent to the Trust. On February 8, 2010, Richard filed a petition for dissolution of marriage and a verified motion for temporary possession of the marital property and debt division. On March 12, 2010, a preliminary hearing was held on Richard's motion. During the hearing, Richard testified that given the nature of his expenses, it would be difficult for him to "pay even fifty dollars a week" for incapacity maintenance. (March 12, 2010 Hearing, p. 22). The trial court inquired about the Volkers Group account, and asked for an accounting of the money:

> Well ... you, I guess went through about [$600,000] in your ... retirement account. You had to borrow a second mortgage that amounted to what sounds to me to be [$180,000], and according to your bankruptcy, uh, you racked up [$122,000] in credit cards, that's almost a million dollars. Where did it all go? Do you have antiques, paintings? ... Oriental Rugs?

(March 12, 2010 Hearing, p. 54). At the conclusion of hearing, the trial court denied Richard's request for temporary possession of the marital residence and permitted Penny to remain in the Wilson Street house pending the final hearing,

1. Richard and Penny were first married in 1997; however, that marriage was annulled shortly after their honeymoon.

2. The parties filed for bankruptcy in May 2009.

which was held on August 11, 2010. During the August 11, 2010 hearing, the trial court asked Richard: "How in the world these kind of expenditures, withdrawals from this account over the years and these unbelievable credit card debts, I mean this is a—it's unbelievable, I mean, you had to be living a lifestyle like movie stars." (August 11, 2010 Hearing, p. 106). On September 10, 2010, the trial court entered a decree of dissolution of marriage, and ordered the following, in relevant part:

4. At the time of their marriage Wife was disabled and receiving Social Security as a disabled person. Husband admitted that he was aware of Wife's disability when he married her and understood that he was becoming responsible for the support and maintenance of Wife due to her disability. The [c]ourt now finds that pursuant to I.C. [§ ] 31–15–7–2(2)[3] that Wife is physically or mentally incapacitated to the extent that the ability of Wife to support herself is materially affected and that an award of maintenance for Wife is necessary. The [c]ourt further finds that Wife is taking medication costing approximately four hundred dollars ($400.00) per month and lacks sufficient property, including marital property apportioned to her, to provide for her needs and that an award of maintenance for Wife is necessary for the duration of her natural life or until the disability is removed.

\* \* \*

6. The [c]ourt finds that Husband commingled the marital property consisting of Wife's proceeds of the sale of the home she owned prior to the marriage and the proceeds of the sale of the Woodbine Drive property and invested substantial sums of marital assets in the Wilson Drive residence. These transfers of marital assets to Husband's trust were made after he had advised Wife he wanted a dissolution of their marriage and the [c]ourt finds they were made in an effort to place marital assets outside the reach of Wife. . . . Husband should pay the sum of two thousand dollars ($2,000.00) per month as permanent maintenance for Wife's natural life, until her disability is removed, or until she remarries.

7. At the time of the parties' marriage[,] Husband had assets of over $600,000 in an investment fund with the Volkers Group. Since Husband had complete control over these assets during the marriage the [c]ourt is unable to determine what increase in the funds occurred during the marriage. In addition, the evidence indicated that Husband made many large withdrawals particularly after the marriage and even larger and more frequent withdrawals after he announced to Wife he desired a dissolution. Husband's $600,000 investment fund was totally depleted by March, 2010 and at trial Husband was unable to explain where all the funds had gone. The [c]ourt finds that withdrawals and distributions as large as forty thousand dollars ($40,000.00) in a given month occurred and Husband could not account for where this large a sum had been expended. The [c]ourt finds the parties did not travel extensively or acquire art, real estate or other expensive assets and must conclude that Husband has concealed these transfers in order to increase the size of his marital share of the estate.

(Appellant's App. pp. 5–7).

Richard now appeals. Additional facts will be provided as necessary.

---

**3.** It appears that the trial court intended to cite I.C. § 31–15–7–2(1) regarding whether the trial court may find that spousal maintenance is necessary if a spouse is physically or mentally incapacitated.

## DISCUSSION AND DECISION

### I. *Standard of Review*

When a trial court enters findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A), we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Smith v. Smith,* 938 N.E.2d 857, 860 (Ind.Ct.App. 2010). In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. *Id.* Those appealing the trial court's judgment must establish that the findings are clearly erroneous. *Id.* Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. We do not defer to conclusions of law, however, and evaluate them *de novo. Id.*

### II. *Spousal Maintenance*

Richard contends that the trial court erred when it awarded Penny spousal maintenance in the amount of $2,000. Specifically, he argues the trial court failed to consider relevant factors, such as his age and his ability to pay when ordering maintenance and that the award "consumes nearly all (if not all) of [his] income." (Appellant's Br. p. 6).

The occasions under which a trial court may order spousal maintenance payments are limited. *Marriage of Erwin,* 840 N.E.2d 385, 390 (Ind.Ct.App.2006). One circumstance, which is referred to as "incapacity maintenance," is illustrated in Indiana Code section 31–15–7–2(1), which provides:

If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected, the court may find that maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court.

Thus, the trial court's power to award spousal maintenance is not mandatory; it is wholly within the trial court's discretion, and we will reverse only when the decision is clearly against the logic and effect of the facts and circumstances of the case. *Fuehrer v. Fuehrer,* 651 N.E.2d 1171, 1174 (Ind.Ct.App.1995), *trans. denied.* "A maintenance ... award is designed to help provide for a spouse's sustenance and support." *McCormick v. McCormick,* 780 N.E.2d 1220, 1224 (Ind.Ct.App.2003). "The essential inquiry is whether the incapacitated spouse has the ability to support himself or herself." *Id.; see also* I.C. § 31–15–7–2(1). Our supreme court has held that a trial court's discretion to award incapacity maintenance under I.C. § 31–15–7–2(1) is limited to those instances where the trial court has found that the spouse's ability to work and support himself or herself is materially affected. *Cannon v. Cannon,* 758 N.E.2d 524, 526 (Ind. 2001).

Here, the trial court awarded Penny incapacity maintenance based upon the finding that she had been receiving social security disability benefits prior to her marriage to Richard. In fact, Richard admitted that he was aware of her disability when they married and "understood that he was becoming responsible for the support and maintenance of [Penny] due to her disability." (Appellant's App. p. 5).

It appears that Richard is not challenging Penny's incapacity, as he concedes that the trial court's conclusion that Penny is physically or mentally incapacitated to the extent that her ability to support herself is materially affected *could* support the deci-

sion to award maintenance. (Appellant's Br. p. 2). In *Paxton v. Paxton,* 420 N.E.2d 1346, 1348 (Ind.Ct.App.1981), we held that medical testimony was not required to support an award of incapacity maintenance where the wife testified that she was receiving social security disability due to medical conditions and that she was unable to hold a job because of her disability. As such, the thrust of Richard's argument is that the trial court's conclusion that he dissipated the marital funds was an inappropriate consideration when awarding incapacity maintenance in the amount of $2,000 a month.

In support of his argument, Robert cites to *Cannon,* where our supreme court affirmed the denial of incapacity maintenance and concluded that the "evidence as to whether [the wife] was disabled to the point that her ability to support herself is materially affected is inconclusive." *Cannon,* 758 N.E.2d at 527. In *dicta,* while discussing that the Legislature narrowly circumscribed the authority of courts to award spousal maintenance, the court went on to say that

> [w]hile such factors as payments made by one spouse to another pursuant to the terms of provisional orders and depletion of marital assets are appropriate considerations in dividing the marital pot, *see* Ind.Code § 31–15–7–5 (1998), we believe that the statutory scheme for spousal maintenance does not admit of such considerations.

*Id.* In making that assertion, however, our supreme court was referring to whether a trial court can consider depletion of marital assets as a determining factor in *awarding* incapacity maintenance, not in determining the amount to be paid by the paying spouse. Similarly, here, in discussing the depletion of funds, the trial court was referring to the distribution of the marital pot, not whether to *award* Penny incapacity maintenance: "The [c]ourt finds

that an unequal distribution of marital assets is appropriate in this case pursuant to I.C. [§ ] 31–15–7–5(4) due to the disposition or dissipation of the parties' property and [Richard's] inability to account for such a large portion of the marital assets." (Appellant's App. p. 13). Additionally, the trial court found that Richard had commingled funds from the Trust with marital property:

> The [c]ourt finds that [Richard] commingled the martial property consisting of [Penny's] proceeds of the sale of the home she owned prior to the marriage and the proceeds of the sale of the Woodbine Drive property and invested substantial sums of marital assets in the Wilson Drive residence. These transfers of marital assets to [Richard's] trust were made after he had advised [Penny] he wanted a dissolution of their marriage and the [c]ourt finds they were made in an effort to place marital assets outside the reach of his wife....

(Appellant's App. p. 6). Based on this, the trial court was within its discretion to determine that Richard had transferred and commingled funds from the marital pot to the Trust and that he had dissipated funds when it determined the appropriate distribution of the martial pot. *See* I.C. § 31–15–7–5. As such, Richard has failed to demonstrate that the trial court abused its discretion when it awarded Penny $2,000 a month in incapacity maintenance.

### CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion when it awarded Penny $2,000 a month in incapacity maintenance.

Affirmed.

DARDEN, J., and BARNES, J., concur.