**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANTS:

**STEVEN K. HUFFER**
**JOSHUA F. BROWN**
S.K. Huffer & Associates, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**JAMES R. FISHER**
**DEBRA H. MILLER**
Miller & Fisher, LLC
Indianapolis, Indiana



FILED
Jun 05 2012, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

PERFORMANCE MATTERS )
ASSOCIATES and CONSECO )
MARKETING, LLC, )
      )
    Appellants-Defendants, )
      )
      vs. )   No.  29A05-1107-PL-361
      )
PATRICK A. FORTUNE, )
      )
    Appellee-Plaintiff. )

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable William J. Hughes, Judge
Cause No. 29D03-0704-PL-393

**June 5, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

Case Summary and Issues

Performance Matters Associates, Inc. ("PMA"), and Conseco Marketing, LLC ("Conseco Marketing") (collectively referred to as the "Defendants"), appeal the trial court's judgment in favor of Patrick Fortune on his complaint for breach of contract and accounting. Defendants raise several issues for our review, of which we find the following dispositive: whether the trial court clearly erred in finding the Defendants breached the parties' Agreement and therefore erred in entering judgment for Fortune. Concluding the trial court did not clearly err, we affirm.

Facts and Procedural History

Conseco Marketing is a wholly-owned subsidiary of Conseco, Inc. Conseco Marketing contracts with independent agents who sell Conseco[1] insurance products. PMA is an independent marketing organization that recruits, trains, and provides support to insurance agents. PMA is also a wholly-owned subsidiary of Conseco, Inc.

Fortune, under the PMA umbrella, entered into a Sales Representative Agreement (the "Agreement") with Conseco Marketing dated September 19, 2004.[2] The Agreement, in relevant part, stated:

> II. AGREEMENT DATE
> The Agreement Date applies to all Policies issued on or after the Agreement
> Date, which is specified on the signature page of this Agreement.
> * * *

---

[1] Several different entities, all with "Conseco" in the name, were involved in these events. Where it is Conseco Marketing, the remaining defendant in this case, we have so noted. Where it is any other Conseco entity, we have referred to it as "Conseco" for simplicity's sake.

[2] Fortune had also entered into other contracts with Conseco Marketing or its predecessors on earlier dates, but all parties agree the 2004 Agreement is the governing document in this dispute.

III. DUTIES, OBLIGATIONS, AUTHORIZATION AND LIMITATIONS

* * *

5. So long as this [A]greement is in effect, you will not solicit insurance policies for an insurance company that is not a Conseco company unless the Company has given you prior written authorization to do so.

* * *

16. . . . You attest that you are familiar with and understand the terms and conditions of the Policies and the supporting marketing literature made available by us in connection with any of the Policies which you sell under this Agreement.

* * *

18. You agree that you will sell Policies and otherwise perform under this Agreement in compliance with all applicable federal and state laws, statutes, regulations and guidelines and within all the Company's rules and procedures which are intended to implement or which are otherwise related to such laws, statutes, and regulation guidelines. You acknowledge the Company's obligation to investigate alleged breaches of such laws, statutes, regulations, guidelines, rules or procedures, as it may deem appropriate, and to act on the findings of such investigations. You further agree to cooperate fully in any investigation.

* * *

22. You agree to conduct your activities in a professional manner and in accordance with all laws and regulations in force in the states in which you market any Conseco Company's products. You agree to comply and cooperate with the Company in any investigations and understand that this Agreement can be terminated for cause for your failure to cooperate or comply with the company's market conduct related rules, procedures or guidelines. You agree to adhere to and subscribe willingly to Conseco's Corporate Code of Conduct, which goes beyond minimum legal requirements . . . .

* * *

VIII. COMPENSATION

* * *

2. Your compensation shall be based on premiums paid on Policies issued by us on applications obtained by you prior to the termination date of this Agreement, at the rates specified in the attached Compensation Schedules.

* * *

7. Compensation payable under this Agreement will continue to be paid after the date of termination for business submitted by you prior to the effective date of such termination of this Agreement according to the vesting terms of the attached Compensation Schedules, unless compensation is forfeited under Section IX, item 2, of this Agreement.[3]

---

[3] This reference would appear to be a typographic error, as Section IX, item 2 concerns advance

\* \* \*

X.  TERMINATION

1.  Termination without Cause

      a.  Either party may terminate this Agreement by giving written notice to the other party at least thirty (30) days prior to such termination date.

      . . .

      \* \* \*

2.  Termination for Cause

This Agreement will be immediately terminated for cause:

      a.  Upon failure to perform any of its material obligations or covenants and failure to conform to the rules and regulations of the Company. . . .

      b.  Upon reason of fraud or willful or negligent violation of any federal or state statute or other directive affecting policies or the solicitation of policies issued by any Conseco Company, or misappropriation or withholding of funds, or any action taken or sanctioned by you without our prior knowledge and approval which results in the cancellation or surrender of policies issued by any Conseco Company.

      c.  If your license to act as an insurance agent or broker is revoked for cause after an opportunity for a hearing by the insurance department of any state or territory.

      d.  If you, while this Agreement is in force or within two years following its termination, endeavor to induce representatives to discontinue their contracts or appointments with the Company or the Conseco Companies or if you at any time, before or after termination of this Agreement, replace or attempt to replace the business of the Company with that of any other insurance carrier. . . .

      e.  If you fail to pay an indebtedness to the Company on Demand.

      f.  If you otherwise acted to prejudice materially the interests of Company in breach of this Agreement.

      \* \* \*

\* \* \*

5.  Upon termination for cause, all rights to vested compensation will be forfeited.  You agree that this provision will survive the termination of this Agreement, and that the Company is entitled to divest you of your compensation should you engage in activities described in Section IX (2)(c) or Section IX (2)(e)[4] after this Agreement is terminated.

\* \* \*

---

compensation; whereas Section X, item 2 concerns termination for cause which can trigger forfeiture of compensation.  Because our resolution of the issues does not require us to reach the issue of forfeiture, however, the error, if any, is irrelevant.

[4]  Again, this would appear to be a typographic error, as there is no item 2(c) or 2(e) in Section IX.

XI.  NON-WAIVER

Forbearance or neglect of the Company to insist upon the performance of any of the terms of this Agreement or to declare a forfeiture or termination against you shall not constitute a waiver of such rights and privileges.

XII.  ENTIRE AGREEMENT AND PRIOR AGREEMENTS

This Agreement is the sole and entire agreement between the parties.  Any understandings, negotiations, representations, statements, promises and agreements, oral or otherwise, not included in this Agreement shall have no force and effect in the construction of the rights and obligations of the parties except as provided in this Section XI [sic].  Compensation Schedules for this Agreement and any subsequent changes to such Compensation Schedules shall apply only to new applications submitted by and through you after such become effective.  Any compensation payable under a prior Agreement shall continue to accrue in accordance with the rates specified in the Compensation Schedules in force at time of policy issue.  Payment of such accrued compensation is subject to any liens, indebtedness or assignments, and is subject to forfeiture under Section IX of this Agreement.

Appellants' Appendix at 236-41.  Fortune described his compensation as comprised of a first-year commission when he sold a new policy that was a percentage of the yearly premium and then a commission each year thereafter that the policy was renewed that was a smaller percentage of the yearly premium.  After a certain number of years, the renewal commissions on a policy were vested, and he would continue to receive the renewal commissions even after the Agreement was terminated, provided it was not terminated for cause.

Fortune sold products for a predecessor of Conseco and for Conseco for several years prior to the effective date of the Agreement.  During this time, Fortune was "flagged" for four instances in which he wrote the wrong birthdate for a customer on an application.  Id. at 283.  Notwithstanding these errors, Conseco Marketing thereafter entered into the Agreement with Fortune.  In late 2004 and early 2005, Conseco received three complaints about Fortune, including a complaint that he failed to terminate a policy as the policyholder requested (the

5

"Swank complaint"), a complaint that he convinced policyholders to convert and upgrade a policy by giving them erroneous information about their return of premium benefits (the "Bish complaint"), and a complaint that he entered the birthdate of a policyholder incorrectly on an application which appeared to make her eligible for coverage for which she was not actually eligible due to her age (the "Nelson complaint"). Conseco investigated each complaint, including requesting information from Fortune, which he did provide. Conseco ultimately determined the Swank and Bish complaints had no merit.

As for the Nelson complaint, Fortune sold to a customer a Heart Care policy which required the insured be under the age of seventy-five. The customer's date of birth is November 15, 1924, which meant that when Fortune called on her in January of 2004, she was seventy-nine. Fortune, however, wrote her date of birth as November 19, 1928, on the application, making it appear that she was seventy-four. Fortune testified he obtained the birthdate information from Conseco's agent call center, that he wrote it on the application and showed it to the customer, and that she affirmed the information was correct before she signed the application. Conseco determined this was a material misrepresentation requiring the policy be cancelled. The customer's premiums were returned to her.

On April 8, 2005, Conseco terminated the Agreement with Fortune for cause:

> This letter is written notification that under the Termination for Cause provision of your contract with Conseco Companies, your contract will be terminated immediately . . . .
> * * *
> All rights to vested compensation with [Conseco Companies] are hereby forfeited pursuant to your contract. The company has divested you of all compensation and you shall immediately pay us all sums due to the company. The forfeited commissions will not offset any monies due to the company.

Id. at 249-51.[5]   Fortune sought additional information regarding the reason for his termination.  By letter dated April 29, 2005, Fortune was informed that there were "several reasons" for his termination:

> First, you have failed to fully cooperate in any investigation.  Second, you failed to understand the terms and conditions of the policies and the marketing literature for the policies you sold under the Agreement.  Third, you failed to adhere to the company's market conduct related rules, procedures and guidelines.  Fourth, you failed to comply with the company's Corporate Code of Conduct in relation to misrepresentation of any policy benefit, condition or limitation.

Id. at 258.  Fortune received no commissions after April 8, 2005.

In April 2007, Fortune filed a complaint for breach of contract, accounting, and declaratory judgment against PMA, Conseco Marketing and other Conseco companies.[6]  In early 2011, the case was tried to the bench.  The trial court entered extensive findings of fact and conclusions of law, including the following:

> 15.  On April 8, 2005, several letters were issued to [Fortune].  These letters notified [Fortune] that his termination had been changed from "notice" to "cause" . . . .  The written letters of termination ("termination letters") delivered to Fortune, and dated April 8, 2005, advised Fortune that Conseco had determined that Fortune had forfeited his right to receive vested compensation pursuant to [the Agreement]. . . .
> 16.  The termination letters constituted Conseco's breach of its contract with Fortune unless Fortune's commissions were properly and legally forfeited under the terms of the [Agreement].
>         * * *

---

[5] Fortune apparently had separate appointments with Conseco Companies to sell insurance products from Conseco Health Insurance Company, Conseco Life Insurance Company, and Conseco Annuity Assurance Company; hence he received three termination letters, identical but for the company identification therein.

[6] Conseco Marketing filed a counterclaim against Fortune regarding a "Settlement Agreement and Mutual Release" in another matter which Fortune allegedly breached.  The trial court found against Conseco Marketing on its counterclaim, and no issue is raised on appeal with regard to that part of the judgment.

18. The [Agreement] expressly provides that it "applies to all Policies issued <u>on or after</u> the Agreement Date, . . . ." The Agreement Date is defined as that which is specified on the last page of the [A]greement. The only date on the last date of the [Agreement] is the date it was signed by [Fortune], September 19, 2004. The Court finds that the [A]greement by its express and unambiguous terms does not apply to any policy issued prior to September 19, 2004.

* * *

22. As a matter of law, termination of the [Agreement] for cause under paragraph X(2) . . ., even if such termination for cause was justified, and even if the forfeiture provisions of the [Agreement] were enforceable, does not result in the forfeiture of any commissions attributable to policies issued before September 19, 2004. . . .

23. The next issue is what happens to commissions for policies issued after September 19, 2004. In this instance pursuant to Section X(5) commissions due on policies issued under the terms of the [Agreement] are forfeited as follows:

5. Upon termination for cause, all rights to vested compensation will be forfeited. You agree that this provision will survive the termination of the Agreement, and that the Company is entitled to divest you of your compensation should you engage in activities described in Section IX (2)(c) or (e) after this agreement is terminated.

24. In regard to Section X(5), it specifically permits forfeiture of compensation for post termination conduct as defined in Section IX(2)(c) or (e). The [Agreement] contains no provision labeled Section IX(2)(c) or IX (2)(e). The [Agreement] does contain a Section IX(2) which provides [for Advanced Compensation]. The [Agreement] does contain a provisions [sic] at Section X(2)(c) and ([e]) which may be the intended reference in Section X(5). This provisions [sic] provide as follows:

Section X: TERMINATION

2. Termination for Cause

c. If your license to act as an insurance agent or broker is revoked for cause after an opportunity for a hearing by the insurance department of any state or territory.

e. If you fail to pay an indebtedness to the Company on Demand.

The Court need not determine whether the [Agreement] simply contains a typographical error in the reference found in Section X(5) because there is no evidence in this record that either grounds for forfeiture of compensation set forth in X(2)(c) or (e) exists or is relied upon by Defendants.

25. The [Agreement] is a contract of adhesion, drafted entirely by Conseco. . . .

* * *

29. The [Agreement] purports to permit the declaration of a forfeiture unilaterally by Conseco as a result of any termination for "cause." However, by the terms of the [Agreement] that provision is only applicable to commissions for policies issued on or after the Agreement Date, September 19, 2004.

* * *

31. The record before the Court fails to provide any contractual justification for Defendants['] claim that [Fortune] forfeited his rights to commissions on policies issued prior to September 19, 2004. While there may have been similar contractual provisions, those provisions are not in the record. . . . However, even if [an earlier] agreement had been submitted as an exhibit herein, it would not assist the parties in the issue of forfeiture of commission for policies issued prior to the date of September 19, 2004 because, the record is clear that this agreement was terminated by the issuance of the [Agreement] in September 2004. Therefore, the prior agreement was not terminated for cause and forfeiture of commissions would not be permissible under the terms of the [Agreement] and the law applicable to the strict construction of forfeiture provisions.

* * *

38. Conseco alleged that its termination for cause of Fortune in April 2005 was based upon three individual complaints against Fortune: (1) the Swank policy cancellation request; (2) the Bish claim that she was misinformed about the operation of the return of premium feature; and (3) the error in the birth date of Miriam Nelson on two insurance policy applications.

39. . . . Conseco concluded from its investigation into the Swank complaint, that Fortune did nothing wrong. Fortune's conduct, in connection with Swank, did not breach the [Agreement], and does not support termination for cause under the contract. Since such conduct does not constitute cause under the [Agreement] it can not serve as the basis for a forfeiture of compensation under the terms of the contract.

* * *

41. Conseco's internal documents indicate that the Bish complaint had no merit. . . .

42. Even [a Conseco employee] admitted in her deposition that because the Bish and Swank complaints were determined to be without merit, they "count for nothing" in a termination for cause determination, either individually or collectively.

* * *

50. Miriam Nelson signed three forms on January 6, 2004 in which her date of birth was incorrectly stated as November 19, 1928. This date appears to be written in each case in the handwriting of [Fortune].

51.  Fortune claims that after the insurance applications were filled out, he gave the completed application forms to Miriam Nelson, asked her to read them, and, if all of the information was accurate, to sign. . . .

52.  Miriam Nelson's signature appears on each of the application forms, one for a heart policy and one for an accident policy.  In each application there is a statement that she was certifying by her signature on each that her date of birth and age were those indicated on the application.
* * *

54.  When the policies were delivered, Dean Nelson, son of Miriam, and Miriam Nelson noticed that the birth dates contained on the applications were inaccurate, but did not notify Conseco or Fortune of the birth date error.

55.  When Conseco's underwriting received the Miriam Nelson accident policy application form, Conseco's database identified another accident policy that had been written for Miriam Nelson earlier, and which was still in place.
* * *

57.  A Conseco underwriter . . . confirmed that the two policies were for the same person and, as a result of that examination, Mrs. Nelson was notified that she was not eligible for the new accident policy, because the other policy was already in place.
* * *

59.  Conseco admits that, if Fortune received the inaccurate birth date information from the Conseco agent call center, and Miriam Nelson signed the application after reading the completed application with the inaccurate birth date, Fortune did nothing wrong. . . .
* * *

62.  The error in the Nelson birthday appearing in the applications submitted by Fortune on January 6th, 2004, could have resulted from either a data entry error in the Conseco database, an error made by the Conseco agent call center in providing Fortune the information concerning the Nelson birth date from the Conseco database, or an error by Fortune in mishearing or misrecording the birth year information provided to him over the phone from the Conseco call center.  Not one of these possible explanations of the error in the Nelson Birthday would justify a termination for cause by Conseco and PMA so long as the incorrect date was in the application at the time Miriam Nelson placed her signature on those forms on January 6, 2004.

63.  An intentional action by Fortune in recording inaccurate birth dates in the Nelson applications would have justified termination of Fortune for cause.  The burden of establishing that this is the explanation of the error in birthdates is upon the Defendants by a preponderance of the evidence.  The Defendants have failed in this burden.

64. The submission of the Nelson applications with an inaccurate birth date, under the circumstances of this case, could serve [as] grounds for the termination of the contract for cause by Conseco. The record herein indicates that the at [sic] the time of the policy applications completed by Miriam Nelson, [Fortune] was aware that there were errors in the Conseco Agent Services Databases regarding dates of birth and ages. He had reported those dates to Conseco. He nevertheless relied upon those dates in a matter as critical as where the age of a potential insured could result in denial of coverage either at issuance or upon later claim. At the very least this was negligent action by [Fortune] and by the specific terms of the contract would permit the Defendants to terminate his contract for cause under paragraph X(2)(b).

65. No agent has ever previously been terminated for cause by Conseco as a result of an error in information contained on an application prepared by the agent and signed by the applicant, unless that information was altered by the agent after the applicant signed it. . . . This record does not support such a finding that the inclusion of the incorrect date of birth on the Nelson forms was intentional to permit coverage to be issued; however, the record amply supports that [Fortune] was at least negligent in that determination. Defendants now seek to justify their claimed forfeiture to commission under a contract signed between the parties 9 months and 13 days after this alleged negligent act. Such an interpretation of the contract is unconscionable and the Court declines to interpret this contract as granting such a right to declare forfeiture.

66. At trial, Conseco and PMA identified four other instances in which a birth date on an insurance application obtained by Fortune contained an inaccurate birth date. In each of these four instances, the inaccurate birth date made the applicant appear to be eligible for a policy for which the applicant was actually too old to qualify. . . .
* * *
68. All four of [these] applications . . . were applications submitted prior to the effective date of the [Agreement]. The issue of the four applications was brought to the attention of PMA, investigated, and resolved in Fortune's favor by PMA, prior to the effective date of the [Agreement]. Because the [Agreement] was entered into with full knowledge by PMA of the four applications, Conseco and PMA have waived any claim that these four applications may form the basis of a breach of the [Agreement].

69. Conseco and PMA allege as an additional ground for Fortune's termination for cause, that Fortune did not cooperate with Conseco's and PMA's investigation of the Swank, Bish, and Nelson complaints.

70. The sole basis of the allegation that Fortune failed to cooperate with the investigations is the allegation that Fortune failed to respond in a

11

timely fashion to a request for a statement concerning each of these complaints. Neither the [Agreement], nor any written Conseco standard policy or practice, establishes a deadline for responding to a request from Conseco for a written statement. . . .

* * *

78. The Court finds that there were no unreasonable delays in Fortune's responses to Conseco's requests for information concerning the Bish, Swank and Nelson issues, and that Fortune did not breach the [Agreement] by his response times.

79. In general a contract cannot be breached by actions or omissions occurring before the contract was executed and known to the parties to the contract at the time of contracting in the absence of representations or warranties concerning prior events or conduct.

80. Conseco's and PMA's claim that Fortune breached the [Agreement] by his actions prior to April 8, 2005 fails. The Defendant Conseco breached the contract herein when it declared its contract with Fortune terminated for cause.

* * *

87. A party who breaches a contract may not thereafter enforce the contract provisions against a non-breaching party.

88. The [Agreement] at Section X(2)(d) contains a provision for forfeiture in the event of competition after termination. . . .

* * *

90. The record herein establishes that subsequent to April 8, 2005, [Fortune] did violate the provisions of Section X(2)(d) at least by having individuals reduce coverage under policies provided by Conseco and then replace that coverage with coverage provided by another insurance company under a policy [Fortune] sold the former Conseco insured. This activity clearly would have permitted Conseco to then declare the termination of [Fortune] as a termination for cause and to then use that termination for cause an an [sic] beginning point to claim forfeiture of earned by unpaid commissions. However, that is not the case before this Court because on the date Conseco would first have had that right, it had already breached its contract with Fortune. Fortune was thereafter no longer bound by the terms of the [Agreement] and is entitled to receive his compensation.

* * *

Id. at 17-37 (citations omitted) (emphasis in original). The trial court therefore entered

judgment in favor of Fortune and against the Defendants on Fortune's complaint, ordering

12

Conseco to pay to Fortune all commission to which he was entitled. The Defendants now appeal the trial court's judgment.

Discussion and Decision

I. Standard of Review

The trial court entered findings of fact and conclusions thereon pursuant to Trial Rule 52(A) at the request of one of the parties, and thus, we apply a two-tiered standard of review: first, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. Clokey v. Bosley Clokey, 956 N.E.2d 714, 718 (Ind. Ct. App. 2011). We will reverse only if the findings or judgment are clearly erroneous. Fischer v. Heymann, 943 N.E.2d 896, 900 (Ind. Ct. App. 2011), trans. denied. "Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them." Id. (citation omitted). A judgment is clearly erroneous "if no evidence supports the findings, the findings fail to support the judgment, or if the trial court applies the incorrect legal standard." Bowyer v. Indiana Dep't of Natural Resources, 944 N.E.2d 972, 984 (Ind. Ct. App. 2011).

We do not reweigh the evidence, considering only the evidence favorable to the trial court's judgment, and we do not assess the credibility of the witnesses. Id. However, we evaluate conclusions of law, such as the interpretation of contractual provisions, de novo. Rennaker v. Gleason, 913 N.E.2d 723, 729 (Ind. Ct. App. 2009). "In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made." Bowyer, 944 N.E.2d at 984.

Although the Defendants purport to appeal the trial court's judgment because "many of the findings contained therein are clearly erroneous," see Appellants' Brief at 1 (Statement of Issues), the crux of the Defendants' actual argument is that the judgment is clearly erroneous because the trial court incorrectly concluded as a matter of law that the Defendants breached the Agreement first when they terminated the Agreement for cause and that the forfeiture clause is unenforceable and not applicable to all of Fortune's vested compensation. Our review of the record indicates the evidence supports the trial court's findings, and we therefore review only the trial court's conclusions of law based upon those findings.

## II. Breach of the Agreement

The essential elements of a breach of contract action are 1) the existence of a contract, 2) the defendant's breach thereof, and 3) damages. Ruse v. Bleeke, 914 N.E.2d 1, 11 (Ind. Ct. App. 2009). The parties do not dispute the existence of a contract, and agree the 2004 Agreement governs the relationship between them. Fortune alleged the Defendants committed a breach by terminating the Agreement for cause when no such cause existed and thereafter withholding his vested commissions, damaging him to the amount of the commissions owed. The Defendants contend Fortune breached the Agreement first and was thus rightfully terminated for cause. The trial court concluded that the Agreement did not apply to any policy issued before the agreement date; that Fortune did not breach the Agreement by his conduct prior to termination; and that the Defendants therefore breached the Agreement first when they terminated Fortune for cause.

The Defendants did not bear the burden of proof on this issue at trial and therefore they appeal from an adverse judgment. See Romine v. Gagle, 782 N.E.2d 369, 376 (Ind. Ct. App. 2003) ("[A]n adverse judgment is one that was entered against a party defending on a given question"), trans. denied.

> When a trial court enters findings of fact in favor of the party bearing the burden of proof, we will deem the findings to be clearly erroneous where they are not supported by substantial evidence of probative value. We will reverse the judgment even where we find substantial supporting evidence, if we have a definite and firm conviction that a mistake was made.

Kotsopoulos v. Peters Broadcast Eng'g, Inc., 962 N.E.2d 97, 105 (Ind. Ct. App. 2011).

Generally, the construction of the terms of a written contract is a question of law. Collins v. McKinney, 871 N.E.2d 363, 372 (Ind. Ct. App. 2007). The goal of contract interpretation is to ascertain and give effect to the parties' intent as disclosed by the language used to express their rights and duties. Id. Where the terms of a contract are clear, the meaning of the contract is determined as a matter of law. Anderson v. Horizon Homes, Inc., 644 N.E.2d 1281, 1290 (Ind. Ct. App. 1995), trans. denied.

The Agreement provides that it "applies to all Policies issued on or after the Agreement Date," which is September 19, 2004. Appellants' App. at 236. Although there was apparently a relationship between Fortune and Conseco Marketing prior to this date, the only evidence in the record regarding the terms of that relationship are a Representative Marketing Agreement dated August 31, 1998, between Fortune and Capitol American; a Sales Representative Agency Addendum signed by Fortune on January 17, 2000 but never signed by a representative of Conseco Marketing; and a signature page signed by Fortune on

September 24, 2003, and signed by a representative of Conseco Marketing on February 9, 2004. Exhibits Volume, Plaintiff's Exhibit 1, Plaintiff's Exhibit 2, and Plaintiff's Exhibit 4. Capitol American was acquired by Conseco at some point after Fortune began selling Capitol American products and Fortune then began selling Conseco products, so the Capitol American agreement is not relevant. The Addendum, in addition to being unrelated to any agreement in the record, concerns "Sub-Producers" recruited by the agent. And the agreement to which the signature page applies is not included in the record, so the signature page proves nothing regarding the relationship of the parties at that time. Thus, even if relevant, the terms of the relationship between the parties prior to September 19, 2004, are unknown.

The Agreement at issue also provides that it is the "sole and entire agreement between the parties." The Defendants assert in their brief that the "plain language of the 2004 [Agreement] proves that it was intended to supersede all previous agreements between the parties." Appellants' Brief at 24. Several provisions of the Agreement apply following the termination of the Agreement. See, e.g., Appellant's App. at 239 (Section VIII.7., stating "Compensation payable under this Agreement will continue to be paid after the date of termination for business submitted by you prior to the effective date of such termination . . . ."); id. at 240 (Section X.2.d., stating "If you, while this Agreement is in force or within two years following its termination . . . ."); id. at 241 (Section XI., concerning non-waiver of rights and privileges under "the terms of this Agreement"). However, there is no provision

16

incorporating the terms of <u>previous</u> agreements or reserving rights under those agreements.[7]

And, even if there were such provisions, as noted above, we do not know the terms of the previous agreements. Thus, consistent with the terms of the Agreement itself and the Defendants' concession, the relationship of the parties is governed solely by the terms of the September 19, 2004 Agreement.

The Agreement provides that it may be immediately terminated for cause for several specific reasons. The general bases upon which the Defendants purported to terminate the Agreement for cause were that Fortune failed to cooperate in investigations; failed to understand the terms and conditions of the policies he sold; failed to adhere to conduct-related rules; and failed to comply with the code of conduct by misrepresenting policy benefits, conditions, or limitations. <u>See</u> <u>id.</u> at 258 (April 29, 2005, termination letter). These bases could fall under the failure to perform any of the Agreement's material obligations/failure to conform to the company's rules and regulations provision or under the otherwise acting to materially prejudice the interest of the company provision, allowing termination for cause. <u>See</u> <u>id.</u> at 240 (Section X.2.a. and X.2.f., Termination for Cause).

The specific conduct for which the Defendants stated they terminated the Agreement with Fortune for cause, however, relate to the three complaints they received within the term

_____

[7] In contrast, we note the Capital American agreement in the record provides that the effective date of the agreement is indicated therein; "[h]owever, if this Agreement replaces an existing Marketing Agreement between Capitol and the Representative, the effective date . . . is the effective date of the replaced Marketing Agreement." Exhibit Vol., Plaintiff's Ex. 1.

of the Agreement. The Swank and Bish complaints were determined by Conseco to be without merit, and therefore cannot form the basis for terminating the Agreement for cause.[8]

The Nelson complaint alleges that in January 2004, Fortune wrote the wrong birthdate for a customer on two applications, in one case making it appear she was eligible for a policy for which she was not actually eligible. As the trial court noted, Fortune's actions in taking the birthdate information from the agent call center, writing it on the application before visiting with the customer, and not specifically asking her if the birthdate was correct or otherwise drawing her attention to the information, was at least negligent. See Appellant's App. at 29 (finding number 64). However, the customer signed the application, affirming that the information contained therein was correct, there was evidence that Fortune had received incorrect information from the agent call center before, there was no evidence that Fortune intentionally changed the birthdate to defraud or prejudice Conseco or the customer, and all of this occurred prior to the effective date of the Agreement. There was also evidence that Conseco knew soon after the application was received and well in advance of the Agreement date that the birthdate on at least one of the policy applications taken in January 2004 was incorrect. The Defendants also alleged that sometime prior to September of 2004, Fortune was advised of four other instances in which a wrong birthdate was discovered on an application he had taken. Again, these policies were issued prior to the effective date of the Agreement, and almost immediately after these incidents were discussed with Fortune, Conseco Marketing entered into the instant Agreement with him. Because any misconduct by Fortune in his handling of these policies occurred prior to the effective date of

---

[8] It is not clear when either of these policies was issued or when the conduct complained of occurred.

18

the Agreement, and because the Agreement does not specifically reserve any rights to Conseco for prior conduct, these are not sufficient reasons for terminating the Agreement for cause.

Finally, the Defendants alleged that Fortune failed to cooperate in the investigations of these complaints. Upon receiving the complaints, Conseco sent to Fortune a letter informing him of the complaint and requesting that he provide a detailed explanation in writing "within three (3) days of receipt of this letter." See Exhibits Vol., Plaintiff's Ex. 22 (forwarding the Bish complaint); Defendant's Ex. 1041 (forwarding the Nelson complaint). Fortune responded to each inquiry. Although it is undisputed that he did not respond to the inquiries within three days after they were sent, Fortune was away from his home a great deal in selling policies for the Defendants – usually Monday through Thursday – and there is no evidence of when he actually received the letters. The Agreement, although providing that Fortune agrees to cooperate fully in any investigation, does not establish the parameters of "full cooperation." There is no evidence that the timing of Fortune's responses prejudiced the Defendants in any way. In fact, Conseco resolved the Bish complaint in Fortune's favor without waiting for his response. The trial court found that Fortune's responses were not unreasonably delayed, and we cannot say this finding is clearly erroneous.

At trial and on appeal, the Defendants also asserted that Fortune breached the Agreement by selling policies for other companies during the term of the Agreement without written authorization. Fortune admitted that he did so, asserting he had verbal authorization. See Transcript at 336. This was not, however, a basis given for terminating the Agreement

at the time of termination, and cannot be relied upon after-the-fact in an attempt to justify an otherwise unjustified termination for cause.

The Defendants were certainly entitled to terminate the Agreement pursuant to the thirty-day notice provision, but as the trial court found, Fortune's conduct did not constitute a breach of this Agreement under the terms of Section X.2. that would warrant termination for cause and forfeiture of his rights to vested compensation. When the Defendants terminated Fortune for cause, declared his vested compensation forfeited, and ceased paying him commissions, they breached the Agreement,[9] and the trial court's judgment in favor of Fortune on his complaint for breach of contract is not clearly erroneous.

Because we hold the Defendants breached the Agreement and had no cause to declare a forfeiture, we need not discuss the trial court's findings and conclusions regarding whether the forfeiture clause is enforceable, and if so, to what extent.

## Conclusion

The trial court's judgment in favor of Fortune on his complaint for breach of contract is not clearly erroneous as the evidence supports the trial court's finding that the Defendants breached the Agreement by terminating Fortune for cause when no cause existed and invoked the forfeiture clause to deny his vested compensation. The judgment of the trial court is affirmed.

---

[9] Therefore, any post-termination conduct by Fortune that might otherwise invoke the forfeiture clause also does not constitute a breach on his part. See Licocci v. Cardinal Assoc., Inc., 492 N.E.2d 48, 52 (Ind. Ct. App. 1986) ("A party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract."), trans. denied; see also Steve Silveus Ins., Inc. v. Goshert, 873 N.E.2d 165, 176 (Ind. Ct. App. 2007) (noting that it is undisputed that the first party to materially breach an employment agreement cannot subsequently enforce a covenant not to compete in that same agreement).

Affirmed.

NAJAM, J., and VAIDIK, J., concur.