**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DAN J. MAY**
Kokomo, Indiana

ATTORNEY FOR APPELLEE:

**KATHERINE J. NOEL**
Noel Law
Kokomo, Indiana



FILED

Oct 23 2012, 9:33 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID A. YOUNG, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 34A04-1204-DR-222 |
| | ) | |
| GLADYS C. YOUNG, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE HOWARD SUPERIOR COURT
The Honorable William C. Menges, Judge
Cause No. 34D04-1104-DR-20

**October 23, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

David Young ("Husband") appeals the deemed denial of a motion to correct error, which challenged the division of marital property in the dissolution of his marriage to Gladys Young ("Wife"). We reverse and remand with instructions.

**Issues**

Husband presents five issues, which we consolidate and restate as two issues:

I.      Whether the trial court erred in its division of property; and

II.     Whether the trial court abused its discretion by awarding incapacity maintenance to Wife.

**Facts and Procedural History**

The parties were married on October 5, 1998. In contemplation of their marriage, they executed an Antenuptial Agreement dated September 24, 1998 ("the prenuptial agreement"). Its terms provided in relevant part that, "in the event the marriage of the parties is dissolved, G. Christine Brannon shall be entitled to $35,000.00 as a return for her funds used as a down payment for the purchase of a house by the parties, which entitlement shall be made a part of any property settlement or award by the court having jurisdiction over the dissolution." (Pet. Ex. 1.) The prenuptial agreement also provided that all property owned or after-acquired should remain the separate individual property of the party owning the same.

During the marriage, Wife was not employed outside the home. She was awarded a lump sum Social Security disability payment and began to receive monthly disability payments of $1,097.00. Husband retired from General Motors, began to receive monthly retirement benefits of $2,928.95 per month, and obtained other full-time work as an

2

electrician.

Over a period of several years, the parties purchased and sold a house in Indiana, purchased and sold two houses in Missouri, and purchased another house in Indiana. They also incurred substantial joint debt.

Husband and Wife separated on March 10, 2011. At that time, the marital residence was worth approximately $94,000.00 and was encumbered by first and second mortgages totaling nearly $83,000.00. In addition to jointly-acquired household furnishings and a small balance in a joint bank account, the parties had some individually-owned property. This consisted of Husband's retirement accounts, Wife's investment account of approximately $6,737.00[1], Wife's three rings, Husband's Jeep, and Wife's Buick (each having a loan nearly equal to the vehicle value).

On October 4, 2011, the parties appeared for a final hearing. Wife asked that the trial court find the prenuptial agreement binding and award her $35,000.00 and the marital residence. However, she also requested that the appreciation of Husband's retirement accounts be included as part of the marital pot. Finally, she sought an award of incapacity maintenance, attorney's fees, and an order that Husband pay the majority of the marital debt.

On January 17, 2012, the trial court entered an order dissolving the parties' marriage. Wife was awarded incapacity maintenance of $750.00 per month. Each party was ordered to pay his or her own attorney's fees.

In pertinent part, the court found the prenuptial agreement to be valid and binding.

---

[1] Just prior to the marriage, after Wife had sold a convenience store and before she made the $35,000 down payment, the investment account was worth around $100,000.00.

Wife was awarded the marital residence and was ordered to hold Husband harmless for the first mortgage. Husband was ordered to pay the second mortgage and to pay to Wife the sum of $11,700.00 "in order to equalize the division of property divisible after application of the provisions of the Pre-Nuptial Agreement." (App. 10.)

Each party was to retain his or her respective vehicle and pay the loan. Husband was to pay his individual tax liabilities from 2010 and a small family loan. Husband was also ordered to pay off a loan for furniture ($2,639.48), a jewelry account ($1,423.50), a personal finance account ($3,841.40), a Chase Master Card balance ($13,135.29), and a Lowe's account ($968.96). Wife was to pay some department store accounts, aggregating to approximately $2,500.00.

Husband filed a motion to correct error, which was deemed denied. He now appeals.

**Discussion and Decision**

Standard of Review

Indiana law favors antenuptial agreements. In re Marriage of Boren, 475 N.E.2d 690, 693 (Ind. 1985). Such agreements are legal contracts entered into prior to a marriage, whereby the parties attempt to settle the interest of each spouse in the property of the other, both during the marriage and upon its termination. Brackin v. Brackin, 894 N.E.2d 206, 210 (Ind. Ct. App. 2008). We will uphold antenuptial agreements as valid contracts so long as they are not unconscionable and are entered into freely and absent fraud, duress, or misrepresentation. Id. "Such contracts will be liberally construed to effect, so far as is possible, the parties' intentions." Boren, 475 N.E.2d at 693.

4

As for marital property not covered by a contractual agreement, Indiana Code section

31-15-7-5 provides in relevant part:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
> (2) The extent to which the property was acquired by each spouse:
>  (A) before the marriage; or
>  (B) through inheritance or gift.
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective[.] . . .
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
> (5) The earnings or earning ability of the parties as related to:
>  (A) a final division of property; and
>  (B) a final determination of the property rights of the parties.

Marital property includes both assets and liabilities. McCord v. McCord, 852 N.E.2d 35, 45

(Ind. Ct. App. 2006), trans. denied. A trial court may determine that an unequal division of

marital property would be warranted, but must state its reasons for deviating from the

presumptive fifty-fifty split. Helm v. Helm, 873 N.E.2d 83, 90 (Ind. Ct. App. 2007).

Here, the court sua sponte entered findings with its judgment. When the court makes

specific findings on its own motion, a general judgment will control as to issues upon which

the court has not found and the specific findings control only as to issues they cover. Blazek

v. Blazek, 631 N.E.2d 518, 520 (Ind. Ct. App. 1994).

Division of Property

Husband contends that the trial court engaged in "selective application" of the

prenuptial agreement in Wife's favor. Appellant's Brief at 9. According to Husband, it is

5

apparent that the trial court included his pension in the marital pot contrary to the prenuptial agreement, while also enforcing the $35,000.00 payment provision. Husband then argues that awarding Wife both the residence and a money judgment results in a double recovery to her. He also argues that the trial court inequitably allocated the debt.

The trial court's limited findings with regard to the property division do not permit meaningful review. It is unclear whether the trial court included in the marital pot pension funds that were subject to the exclusion provision of the prenuptial agreement. Although there are references to individual assets (without assigned values), the aggregate value of the divisible marital estate is not specified. It is unclear how the trial court determined that an "equalization judgment" of $11,700.00 was payable by Husband. Moreover, to the extent that the trial court intended to effect an unequal division of non-excluded marital property, or an unequal distribution of marital debt, there is an absence of supporting findings addressed to the applicable statutory factors. We therefore find it necessary to remand the matter for more particularized findings.

Because it will no doubt arise on remand, we address Husband's contention that an award of the marital residence plus a cash sum to Wife to ensure that she receives the return of her $35,000.00 initial investment constitutes double recovery. At issue are the following provisions of the Dissolution Decree:

> 5. Pursuant to the Pre-Nuptial Agreement, the Petitioner is awarded thirty-five thousand dollars ($35,000.00)[.] . . .
>
> 6. The Petitioner is awarded the real estate of the parties, subject to the first mortgage thereon, in favor of PNC Bank, which the Petitioner is to assume, pay, and hold the Respondent harmless therefrom.

(App. 9.) Husband first claims that Wife, through commingling cash funds into successive residences, lost the right to claim the return of her investment. We disagree, inasmuch as the prenuptial agreement specifically contemplates commingling of Wife's cash into real estate and the purchase of successive marital residences does not contravene this contractual intent.

According to Wife's testimony, not contradicted by Husband, the last home in Indiana was purchased with a down payment of approximately $35,000 "from selling the home in Missouri" but recent economic conditions had "destroyed the equity." (Tr. 24, 67.) The essential difficulty is that the value of the real estate investment declined and, assuming the validity of the prenuptial agreement, the divisible marital pot has a negative value. The question becomes, who bore the risk of loss in the prenuptial agreement. Husband asserts that the trial court imposed upon him the entire risk of loss, by giving Wife the residence and a money judgment.

Indiana courts can only enforce the terms of a contract as agreed upon and have no authority to make a new and different contract. Workman v. Douglas, 419 N.E.2d 1340, 1346 (Ind. Ct. App. 1981). Here, the parties contemplated only that real estate would continue to have value such that Wife's initial investment would always be sheltered. This did not prove true. However, Wife has the opportunity to recover her investment through future appreciation of the residence. It is in this manner that she is receiving the benefit of her bargain, the "return for her funds used as a down payment." (Pet. Ex. 1.) We agree with Husband that awarding Wife both the residence and a cash judgment (where the marital estate lacks liquid assets) would amount to double recovery.

7

<u>Maintenance</u>

Husband first claims that Wife waived any claim to spousal maintenance because she agreed, in the prenuptial agreement, to forego any claim upon Husband's after-acquired property and that his future earnings constitute "property" as contemplated by the agreement. Husband did not present this argument to the trial court, and may not present it for the first time on appeal. <u>Kappel v. Kappel</u>, 946 N.E.2d 58, 59 n.1 (Ind. Ct. App. 2011). We turn to our consideration of the statutory award of spousal maintenance.

"The occasions under which a trial court may order spousal maintenance payments are limited." <u>Clokey v. Bosley Clokey</u>, 956 N.E.2d 714, 718 (Ind. Ct. App. 2011). One circumstance, referred to as "incapacity maintenance," is addressed by Indiana Code section 31-15-7-2(1), which provides that a dissolution court may find "a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected" and may find "that maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court."

The dissolution court's power to award maintenance is not mandatory, but is wholly within the trial court's discretion. <u>Clokey</u>, 956 N.E.2d at 718. We will reverse only when the decision is clearly against the logic and effect of the facts and circumstances of the case. <u>Id.</u> Such an award is designed to help provide for a spouse's sustenance and support; accordingly, the essential inquiry is whether the incapacitated spouse has the ability to support himself or herself. <u>Matzat v. Matzat</u>, 854 N.E.2d 918, 920 (Ind. Ct. App. 2006).

Husband challenges the incapacity maintenance award to Wife as unsupported by the

8

evidence and unsupported by a specific finding that her ability to support herself is materially affected such that maintenance is necessary. He points to the lack of medical testimony that Wife is disabled and asks that we "set aside the order for permanent maintenance." Appellant's Brief at 20. However, Husband makes no claim that such expert testimony is required to support an award. Indeed, in <u>Paxton v. Paxton</u>, 420 N.E.2d 1346, 1348 (Ind. Ct. App. 1981), we held that medical testimony was not required to support an award where the wife testified that she was receiving Social Security disability benefits due to her rheumatoid arthritis and uncontrolled hypertension and that she was unable to hold a job because of her disability.

Here, Wife testified that she was receiving Social Security disability benefits, suffered from Crohn's disease, had only one kidney, and had previously been diagnosed with cervical cancer. She testified there was not "any way to rejoin the work force." (Tr. 49.) Without a specific citation to the record, Husband asks us to vacate the award of incapacity maintenance because of Wife's alleged testimony at a provisional hearing that she was performing some work for her daughter, who owns a convenience store. We decline to do so.

Nonetheless, while there is evidence of Wife's disabling conditions, the trial court made no finding that she would be unable to support herself without an incapacity maintenance award. Rather, the court simply stated that "[t]he Petitioner became disabled during the course of the marriage, and the Respondent should be, and he hereby is, ordered to pay, as maintenance, the sum of seven hundred fifty dollars ($750.00) per month, commencing in January, 2012, and continuing each month thereafter, until further order of

9

the court, or until the Petitioner's death or re-marriage." (App. 10.)

We reverse the award of incapacity maintenance and remand for a factual determination of whether or not Wife's ability to support herself is materially affected such that a maintenance award is necessary.

## Conclusion

We reverse the order dividing the assets of the parties and remand with instructions to equally divide the marital estate, consisting of assets and liabilities not subject to the prenuptial agreement, or to provide reasons for deviation from the statutory presumption of an equal division. We reverse the order awarding incapacity maintenance and remand with instructions to determine whether Wife has the ability to support herself absent an award.

Reversed and remanded with instructions.

RILEY, J., and CRONE, J., concur.